UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA

      v.            20 CR. 27-01 TJK

TYREE MARSHALL

DEFENDANTS SENTENCING MEMORANDUM

    Tyree is a young offender who deserves a break. He has distinguished himself from the other young men in this offense conduct by his immense educational achievements and his extraordinary motivation to reintegrate himself in his family and his community through his own rehabilitation and education.

    Another young offender who took advantage of the opportunity for rehabilitation and education at CTF was Jaden Smith, who was sentenced to 42 months incarceration. Tyree applied to the Georgetown University Prisons and Justice Initiative. It took courage and motivation to apply to the program. Once selected, it took hard work and perseverance to succeed.

    The Government made the point in the sentencing memo Smith and for Marshall, that a substantial period of incarceration in the BoP would "provide the Defendant with an adequate amount of time to take advantage of any of the programs offered by the Bureau of Prisons intended to provide him with the skills needed to re-enter society as a contributing member of

it..." This is rubbish. The educational services in the BoP are very limited. The best outcome for Tyree Marshall to re-enter society as a contributing member would be a short sentence and a period of Supervised Release that allows him to take advantage of the wonderful academic and social service resources for returning citizens offered by Georgetown University Prisons and Justice Initiative. To best effectuate this, we request a sentence of Sixty Months for the §946 violation and a downward variance to a minimal sentence of One Day for the §841 Conspiracy Charge.

As documented in the Forensic Evaluation, access to a college education at CTF has given Tyree skills, self-respect, direction and an understanding of the world beyond his neighborhood. Dr. Abudabbeh found:

> During his incarceration at CTF, Mr. Marshall has demonstrated his potential for change, as evidenced by his ability to complete his High School diploma. He has also participated in the Prisons and Justice Initiative (PJI) at Georgetown University, where he was enrolled in various credit/noncredit courses. Of note, Mr. Marshall was selected from many other individuals based upon his "commitment to self-improvement and high level of motivation." Previous instructors have enthusiastically described Mr. Marshall as an endearing young man who is pleasant and easy to like. This notwithstanding, his significant academic progress while at CTF, as well as his present functioning clearly demonstrates his capacity to change and grow when given the appropriate environment. Within this framework, it is quite clear that incarceration within a jail, much like the one where Mr. Marshall presently resides, will only have detrimental outcomes. One can anticipate such factors as the negative influences from other inmates, as well as his vulnerability for multiple victimizations due to his small physical stature, age, and emotional fragility. He has already shown his capacity to change in both the positive and desired direction once provided with appropriate interventions and opportunities for rehabilitation. However, at present he remains at risk for ongoing psychological distress and/or physical harm. Moreover, further incarceration will surely place him at risk of losing what he has already gained while at CTF.

According to Dr. Abudabbeh, there is no need for lengthy incarceration as a deterrent to the defendant. Based on results on forensic testing on the *TCU Criminal Thinking Scale*, she found his criminality score

was low. "Mr. Marshall's response to items pertaining to criminality were all in the LOW range. She found that education and a supportive environment while at CTF enhanced his likelihood of success upon release. She found that since being transferred from CTF to the D.C. Jail his anxiety and fear was high.

### TCU Criminal Thinking Scales

"The *TCU Criminal Thinking Scales* includes 36-items from scales representing Insensitivity to the Impact of Crime, Response Disinhibition, Justification, Power Orientation, Grandiosity, and Social Desirability. The *TCU* consists of six (6) subscales which are associated with criminal thinking and shed a light on the person's attitude towards different areas which have historically been associated with one's attitude towards the law, towards one's own prior criminal involvement, one's relationship with power, sense of entitlement, as well as one's attitude towards others as gauged by coldness and warmth in engaging with others. The subscale scores obtained consist of the following:

Entitlement
Justification
Power orientation
Cold Heartedness
Criminal Rationalization
Personal Irresponsibility

The numbers obtained by tallying the answers are rated as having a Low, Medium, or High score in the above areas questioned. Overall, Mr. Marshall's response to items pertaining to criminality were all in the LOW range. In other words, based on the results of the TCU, Mr. Marshall's attitude and position on criminal attitudes and behaviors is in a reassuring range. Additionally, he reports building positive and warm relationships with others.

## Education Programs at CTF

While committed to CTF Mr. Marshall participated in the GED program and successfully received his GED. Thereafter he applied to every educational program available at the Department of Correction. Letters

from his mentors and his professors and certificates of achievement and his college transcripts are attached.

One letter is from Dr. Annalisa Butticci, Assistant Professor of Religious Studies at Georgetown University who wrote:

"Today, Tyree is not the same young man who turned to the street to seek sustenance and recognition. Instead, he is fully devoted to his personal, artistic and intellectual development. He showed an uncommon willingness to change his life and become an educated, responsible, and successful citizen. He is deeply inspired by good role models and captivated by redemption stories. When I asked him about his future, he wrote me: "*Ali once said something that struck me. He said, 'If I am the same man I was ten years ago, then I wasted ten years of my life.' That is to say that you don't have to worry about the things I sing in my songs. When I come home, I will not go back to my old life. I will not go back to things I used to do. I am inspired by other artists who had a similar journey. They are leading by example the right way to handle life.'*"

She continues, "I firmly believe Tyree is critically reflecting on his life experience and working on his future as a responsible citizen, influential artist and successful member of his community."

Aaron Bray, Esq. of Georgetown Law DC Street Law Clinic wrote:
" I would just like to say that Mr. Marshall possesses many tangible and intangible qualities that will make him an asset to his community upon his release." And as to Tyree's potential, he wrote: "Mr. Marshall is a young man with his whole life ahead of him. Mr. Marshall has plans of starting his own business someday. Being an entrepreneur requires grit and Mr.

Marshall's relentless determination to succeed was consistently on full display in my class. Mr. Marshall knows that he has not made the most of his talent thus far, but if given the opportunity, he has the potential to do some remarkable things with the rest of his life."

Tyree Marshall in his final paper for his Government Course 219-90: Prison & Punishment, wrote an essay, <u>Prison Conditions and Rehabilitation.</u> He wrote in relevant part as to prison conditions:

"In some places you can find prisons that want to house as many inmates as possible...inmates receive the basic necessities to survive. . . on the other hand, some facilities focus on re-entry from the first day being incarcerated. It's most likely that violence levels are down because people are treated like human beings."

Tyree was treated like a human being at CTF, especially as a student in the Georgetown Prisons and Justice Initiative. Re-entry resources from Georgetown University are available to him upon his release, as a successful "prison scholar."

According to Dr. Coats of Georgetown University:

*The Scholars program provides an opportunity for incarcerated citizens to achieve higher education and prepare themselves for reentry into society. Mr. Marshall was one of more than 25 men and women in the Correctional Treatment Facility taking the various credit and non-credit courses we offer. We selected Mr. Marshall as a student for the program because of his commitment to self-improvement and high level of motivation. He earned a cumulative GPA of 3.28 with 26 credits.*

*The mission of PJI's Scholars program is to help incarcerated men and women like Mr. Marshall, gain the education needed to be successful once released. Our program is backed by a large body of research that confirms the positive impact of higher education for incarcerated students on their future job prospects and reduced recidivism. We are committed to supporting Mr. Marshall upon release – to continue his education, assist with employment, and any other reentry services he may need. Mr. Marshall's dedication to the Scholars program and motivation to pursue higher education at Georgetown University is a testament to how well he will behave once released.*

Tyree is not a "violent" young man. Although the admitted conspiracy conduct includes possessing illicit substances while armed—Tyree is not a tough. He is not hardened. He is sweet. According to multiple mentors and teachers, he is both a gentleman and a gentle soul. He does not provoke. He does not fight. The Court has not had an opportunity to interact with or get to know Tyree. Therefore, I respectfully ask you to trust the assessments of the teachers and other individuals who mentored him and did get to know him. The letters of support and the multiple certificates of achievement confirm the motivation, remorse and rehabilitation of this young scholar. Their observations confirm he is well spoken, thoughtful and respectful. Though his grammar is not perfect, his paper on Prisons and his letter to the Court reflect that he better understands who he is, his prospects, his future and who he must become to remain a free man.

Offense Conduct-Role in the Offense

While Mr. Marshall's involvement with drug trafficking and his possession of a firearm is clearly serious misconduct that warrants

punishment, a mandatory sentence of five years in a federal prison, for a young man who was barely an adult at the time of these offenses, is adequate penalty. It is more than sufficient to account for the relevant sentencing factors under 18 U.S.C. § 3553(a).

Mr. Marshall's plea saved significant government and Court resources. In addition to waiving the right to a jury trial, he did not file or litigate motions in this case. The parties agree with the offense level and disagree as to the criminal history calculations in the Presentence Investigation Report. Tyree is a first offender. He is very young. His offense conduct was nonviolent. This is his only adult conviction.

The plea agreement for Marshall and others was for a range from five to eight years. Yet, the Government has argued for eight years in every sentencing memorandum. For Tyree, a sentence of 96 months is excessive, greater than necessary and disproportionate to his low level participation in hand to hand sales of gram quantities of drugs. He stood on the street exposed to violence and to arrest. He was not a leader nor a manager. He made no decisions about what to sell, how to package the drugs, or what to charge.

A role adjustment may be granted to bit players like Marshall. U.S.S.G. § 3B1.2, See Application Note 4. A defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as lesser participant. This clearly applies to Tyree. He made no decisions about purchases of product or distribution of profits. He did not supervise others. He did not know the manufacturers or major suppliers. As a street level dealer, he followed orders. He was fungible and he was easily replaced.

If you refer to the PSR at ¶ 6, drug quantities are attributed to each defendant. Tyree is at the bottom of the paragraph, along with Matthews, Robinson and Smith- each is responsible for 40 grams or more of a mixture containing a detectable amount of fentanyl. Without minimizing the wrongfulness of the offense conduct, it is clear that Tyree was at the bottom of the hierarchy and clearly he had a minor role. But for the fact of dual jurisdiction in the District of Columbia, such a small player would normally be charged in State Court.

Sentencing Guideline Calculations

Tyree is responsible for 40 grams or more of a mixture containing a detectable amount of fentanyl. The Sentencing Guideline is 24. Subtract 3 points for Acceptance of Responsibility to 21. We argue that his criminal history should be category 1. The two points assessed for Criminal History overstate his criminality. Moreover, the points are assessed for juvenile adjudications for Simple Possession of Marijuana. As Simple Possession of Marijuana is no longer a criminal offense, no criminal history points should be added.

With a History Category 1, the sentencing range is 37-41 months. He should he be judged as having had a minor role in comparison to other members of the charged conspiracy. He should be judged as having a minimal role in comparison to the manufacturers, suppliers, leaders and managers who are uncharged in this conspiracy. Should the Court a mitigating role adjustment, the Guideline would be reduced by either 2 or 4 points. The respective Adjusted Guideline would be 19 or 17. With a

Criminal History Category 1 the sentencing range would then be 24-30 months.

We request the Court grant a downward variance to One Day, for the 18 USC § 841 count, to arrive at a just, proportional and fair sentence for Tyree Marshall. The 18 USC § 924(c) count carries a mandatory 5 year sentence. The sentence for the 18 USC § 841 count must be consecutive to the § 924(c) count. However, the guidelines are not mandatory. The Court has sentencing discretion. Should the Court base a downward variance upon the sentencing factors set forth at 18 U.S.C. §3553(a), the Court could reasonably determine that a Sentence of 5 Years and One Day is sufficient but not greater than necessary to provide just punishment for Tyree Marshall.

A sentence of five years in federal prison for a 22 year first old offender, is sufficient to accomplish the needs for deterrence, punishment, and to protect the public. A longer prison sentence would have no additional benefit. The Government has propounded no empirical evidence that increases in the length of a prison sentence yield deterrent effects to justify their social and economic costs. Lengthy prison sentences do not appear to have a reduce crime. Sending Marshall to prison for eight years would certainly be less effective to deter any future crime, than would be sending him to university.

Criminologists and law enforcement officials testifying before the United States Sentencing Commission note that retail-level drug traffickers, like Marshall, are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitation changes little. Education

achieves more    change and societal benefit than punishment.

Tyree Marshall has been incarcerated since January 28th, 2020. He was barely twenty years old when he was arrested. These thirty five months have been his only experience with incarceration. He has learned that crime does not pay. Freedom is of great value to him. Initially, he was locked up at CTF, which is a more secure facility for a young man than the D.C. Jail. A few months ago, he was moved to the Jail where he is anxious and fearful.

Since March 2020, Covid restrictions have been enforced throughout the Department of Corrections. For twenty four months he was locked down twenty three hours a day. The Court is well aware of the Marshal's Report on the shocking and inhumane conditions at the Department of Corrections during Covid. See Statement of U.S. Marshal November 2021 which found in relevant part: *The U.S. Marshal's inspection of CDF revealed that conditions there do not meet the minimum standards of confinement as prescribed by the Federal Performance-Based Detention Standards.*

During Covid, Tyree made use of online education programs. He used the computers to study. He used the library cart to get books. He applied to and was accepted into the Georgetown University Prisons and Justice Initiative. He became a dedicated student and a young scholar. Since Covid restrictions were lifted, he has participated in college classes. He has attended lectures and motivational classes led by Judges of this Court. He was especially moved by Magistrate Judge Faruqui who gave inspirational talks to selected young men at CTF. Tyree has learned about the re-entry program sponsored by Judges Walton and Faruqui in U.S. District Court. In addition to applying for the resources at Georgetown University upon his

release from incarceration, he is interested in entering the District Court program for returning citizens through the Office of U.S. Probation.

Sending Tyree to the Bureau of Prisons for a lengthy sentence could have very negative outcomes. He is tiny, vulnerable and fearful. He will have a very difficult time surviving in the Bureau of Prisons. He has had a difficult time since being removed from the security of CTF and been housed at the D.C. Jail. Because of the § 946 firearms conviction, he will likely be placed in a high security prison, rather than a lower level facility or a prison camp. He will be surrounded by hardened prisoners, who are serving sentences for violent crimes.

Dr. Abudabbeh states in her forensic evaluation:

> Previous instructors have enthusiastically described Mr. Marshall as an endearing young man who is pleasant and easy to like. His significant academic progress while at CTF, as well as his present functioning, clearly demonstrates his capacity to change and to grow when given the appropriate environment. Within this framework, it is quite clear that incarceration within a jail, much like the one where Mr. Marshall presently resides, will only have detrimental outcomes. One can anticipate such factors as the negative influences from other inmates, as well as his vulnerability for multiple victimizations due to his small physical stature, young age, and emotional fragility. He has already shown his capacity to change in both the positive and desired direction once provided with appropriate interventions and opportunities for rehabilitation. However, at present he remains at risk for ongoing psychological distress and/or physical harm. Moreover, further incarceration will surely place him at risk of losing what he has already gained while at CTF.

Also, because of the §946 conviction he will be ineligible for many educational and occupational programs in the BoP. The Court should also consider the fact that Marshall will not be eligible for Earned Time Credits (ETCs) under the newly implemented First Step Act of 2018. The 18 U.S.C. 924(c) conviction bars his eligibility to acquire ETCs while incarcerated. He

will serve more actual prison time than most of his fellow federal inmates. See 18 U.S.C. § 3632(d)(4)(D)(xxii).

Permitted Downward Variances

Sentencing Courts are authorized to make downward departures or variances in order to adjust for "aggravating or mitigating circumstance[s]" not adequately taken into account by the Sentencing Commission in the promulgation of its guidelines. We ask the Court to grant a downward "Covid" variance in consideration of the difficult and horrid conditions at the D.C. Department of Corrections, which further deteriorated during the Covid. This resulted in a "fortuitous increase in the severity of sentence". The Sentencing Commission did not consider that conditions at the D.C. Jail "*do not meet the minimum standards of confinement as prescribed by the Federal Performance-Based Detention Standards*".

The Court may consider the fortuitous increase in the severity of confinement, and the dreadful conditions at the D.C. Jail, during most of the period of his incarceration, to merit a downward adjustment akin to that granted in the favored downward departure in Smith, 27 F3d 649, DCDC 1994.

## CONCLUSION

As counsel, it has been both a surprise and a pleasure to get to know Tyree. He really is a nice kid who, hopefully with a little encouragement and stability will succeed. I am impressed by the letters submitted on his behalf by former teachers and mentors. I am impressed by his educational and personal accomplishments during his commitment at CTF.

If the Court evaluates his triumphs and his successes in conjunction with the forensic evaluation finding of a LOW "criminality" score, a sentence of five years and a day, followed by a term of Supervised Release, would serves the mandates of 18 USC§ 1553.

Though he accepted responsibility for the same offenses as some others on this indictment, his sentence should not be the same. The Court must make individual findings for Tyree based on his personal history and characteristics. He is distinguished from the others, by what he has been able to accomplish, his remorse, his rebirth and his rehabilitation.

As Prof. Butticci wrote, "Tyree is remarkable." He should be recognized and rewarded for his motivation, his determination and his hard earned successes.

Allow this young man to serve the mandatory minimum sentence, plus one day, and then permit him to return to the community to take advantage of the re-entry resources promised him by the Georgetown Prisons Scholar Program. Allow him take advantage of the Re-entry Program of the United States Probation Office of the U.S. District Court.

There is no need, nor is there justification for an unduly punitive sentence. A Sentence of Five Years and a day would better serve the

purposes of restorative justice and the sentencing purposes of 18 USC §3553.

We request the Court grant a downward variance for the increased hardships of incarceration suffered during COVID. And a variance for the deplorable conditions at the D.C. Jail. His early acceptance of responsibility should also be a basis for a downward variance.

Most impressively, the Court should consider a downward variance for his extraordinary rehabilitation and his educational success while at CTF, and the invitation extended to him to attend Georgetown University upon his release from confinement.

For these and such other reasons as shall be provided at Sentence in Court the defendant requests the Court exercise sentencing discretion and impose a sentence of Five Years and One Day as just and sufficient, but not greater than necessary for Tyree Marshall.

Respectfully submitted,

_____/s/_____
H. Heather Shaner. #273276
Appointed by the Court for
Tyree Marshall
1702 S Street N.W.
Washington, D.C.20009
202 2658210
hhsesq@aol.com